IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRED HLINAK et al., | ) |
| Plaintiffs, | ) |
| v. | ) 13 C 9314 |
| CHICAGO TRANSIT AUTHORITY, | ) Judge Virginia M. Kendall |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Defendant Chicago Transit Authority moves to dismiss Fred Hlinak and Jennifer Jonke's Amended Complaint under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 40). The Amended Complaint (Dkt. No. 36) contains eight counts alleging that the fare to board CTA trains at the O'Hare Airport Station is illegal under the United States Constitution, the Illinois Constitution, and the CTA's own ordinances. The CTA charges $5 to board at O'Hare and $2.25 at all other stations. Plaintiffs maintain that this price disparity unconstitutionally infringes on their right to travel under the United States Constitution, burdens interstate commerce in violation of the Dormant Commerce Clause, discriminates against interstate travelers in violation of the Equal Protection Clause, and violates similar provisions of the Illinois Constitution. Plaintiffs also seek to represent a class of travelers who paid the $5 fare at the O'Hare Station, but have not moved for class certification. The CTA moves to dismiss the Amended Complaint because it does not state a claim upon which this Court can grant relief. For the reasons stated below, the motion is granted. The Amended Complaint is dismissed.

## BACKGROUND

The Court treats the following factual allegations from the Amended Complaint as true for the purposes of this motion. *Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013). The Court does not accept as true legal conclusion within the Amended Complaint. *See Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) ("Factual allegations are accepted as true at the pleading stage, but allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion.") (internal quotation marks omitted). This section contains the factual allegations in the Amended Complaint that are relevant to Plaintiffs' claims.

The CTA operates a rapid transit system in Chicago including a train line that runs to O'Hare Airport on the City's far northwest side. (Am. Compl. ¶ 8). At all stations, except the O'Hare Station, passengers must pay $2.25 to board the train. (*Id.* ¶ 19). On December 18, 2012, the CTA Board issued Ordinance 012-157, which increased the fare at the O'Hare Station from $2.25 to $5. (*Id.* ¶ 16). The Ordinance cited the need to balance the CTA's budget as the justification for the fare hike. (*Id.* Ex. 1). The CTA characterized the $5 fare as the "Full Fare payment, including a $2.75 surcharge." (*Id.* p. 21). Employees who work at O'Hare Airport property are exempt from the $2.75 surcharge and must pay only $2.25 to board the train at the O'Hare Station. (*Id.* ¶ 20). The CTA train at Midway Airport on Chicago's south side charges a fare of $2.25. (*Id.* ¶ 19). The cost per passenger to operate the CTA at the O'Hare Station is lower than at the Midway Airport Station. (*Id.* ¶ 24).

O'Hare Airport is located on the far northwest side of Chicago. It is a large international airport that accepts flights from across the country and around the globe. (*Id.* ¶¶ 25-26). Midway Airport is also located in Chicago and also accepts both domestic and international flights,

though there are some international origins from which airline passengers can arrive at O'Hare Airport but not Midway. (*Id.* ¶ 25).

On or about August 1, 2013, Plaintiff Jennifer Jonke, an Illinois resident, arrived at O'Hare Airport by rental car. (*Id.* ¶¶ 4-5). After returning the rental car, she boarded the CTA train at the O'Hare Station and paid $5. (*Id.* ¶ 6). On August 15, 2013, Plaintiff Fred Hlinak, a Nevada resident, flew from Las Vegas to Chicago and boarded the CTA train at the O'Hare Station. (*Id.* ¶ 2). Hlinak paid $5 to ride the train. (*Id.* ¶ 3).

## LEGAL STANDARD

A complaint "must state a claim that is plausible on its face" in order to survive a Rule 12(b)(6) motion to dismiss. *Adams*, 742 F.3d at 728 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must plead more than bare legal conclusions to survive a motion to dismiss. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1147 (7th Cir. 2010). "[A]llegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012). A complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" in order to defeat a Rule 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

### A.   The Amended Complaint does not state a claim under the Dormant Commerce Clause

Count One of the Amended Complaint alleges that the O'Hare surcharge violates the negative implications of the Commerce Clause, commonly called the "Dormant Commerce

Clause," because it impermissibly burdens interstate commerce. *See Endsley v. City of Chi.*, 230 F.3d 276, 284 (7th Cir. 2000). The Commerce Clause grants Congress the power to "regulate Commerce . . . among the several States[.]" U.S. Const. art. I, § 8, cl. 3. This affirmative grant of power to Congress implicitly limits the states' power to regulate interstate commerce. *See Endsley*, 230 F.3d at 284 (citing *Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979)).

As a threshold matter, a plaintiff must plead facts that show a burden on interstate commerce in order to invoke the Dormant Commerce Clause. "If a party seeking to invalidate a statute cannot show any burden on interstate commerce, then the Dormant Commerce Clause is not implicated and the statute will not be invalidated." *Alliant Energy Corp. v. Bie*, 330 F.3d 904, 911 (7th Cir. 2003). Assuming the plaintiff can demonstrate such a burden, the Court then applies a two-tiered approach. "To determine whether a law violates this so-called 'dormant' aspect of the Commerce Clause, we first ask whether it discriminates on its face against interstate commerce." *United Haulers Ass'n Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007). "A state regulation 'discriminates' against interstate commerce only if it imposes commercial barriers or discriminates against an article of commerce by reason of its origin or destination out of State." *C&A Carbone, Inc. v. Town of Clarkston*, 511 U.S. 383, 390 (1994). If the Court finds in the affirmative, it generally invalidates the statute "without further inquiry." *Brown-Forman Distillers Corp. v. New York State Liquor Auth*, 476 U.S. 573, 578. The second tier of cases involves a statute that "has only indirect or incidental effects on interstate commerce and regulates evenhandedly[.]" *Alliant Energy Corp.*, 330 F.3d at 911 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)) (internal quotation and citation omitted). In these cases, "the statute will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.*

The Commerce Clause's restrictions on state behavior, however, do not apply if the state is acting as a "market participant" rather than a regulator. "The market participant doctrine differentiates between a State's acting in its distinctive governmental capacity, and a State's acting in the more general capacity of a market participant; only the former is subject to the limitations of the negative Commerce Clause." *Endsley*, 230 F.3d at 284 (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 277 (1988)) (internal quotation marks omitted). "The market-participant doctrine permits a State to influence a discrete, identifiable class of economic activity in which it is a major participant." *Endsley*, 230 F.3d at 284 (quoting *South-Central Timber Dev. v. Wunnicke*, 467 U.S. 82, 97 (1984)). When a governmental entity offers access to its property in exchange for a fee and generally carries itself as a business would in a similar setting, it is acting as a property owner and not as a regulator. *Endlsey*, 230 F.3d at 285.

The Amended Complaint fails to state a claim under the Dormant Commerce clause for three reasons. First, the Dormant Commerce Clause does not govern the analysis at all because the CTA is a market participant rather than a regulator. Second, even if the O'Hare Station fare were subject to Dormant Commerce Clause scrutiny, the Amended Complaint fails to allege any facts that could lead to the inference of a burden on interstate commerce. Finally, even if the O'Hare Station fare did burden interstate commerce, the burden would not be discriminatory and would be even handed and incidental.

The Dormant Commerce Clause does not restrict the CTA's behavior because it acted as a market participant when setting the fare at the O'Hare Station. The CTA is a market supplier of transportation services. It competes with taxis, limousines, and even airplanes for transportation out of O'Hare Airport. The CTA "offers access to its property in exchange for a fee[.]" *Cf. Endsley*, 230 F.3d at 285. Indeed, when a state engages in economic activity, it may – subject to

5

external constitutional limitations – favor in state interests over out of state interests. *See Wiesmueller v. Kosobucki*, 571 F.3d 699, 706-07 (7th Cir. 2009) ("*Any* governmental participation in the economic market is going to have an effect on interstate commerce that people who think the government governs best that governs least will criticize, but those criticisms, even when well founded, do not invalidate the activity.") (emphasis in original). Because the CTA is a market participant, its fare is not subject to Dormant Commerce Clause scrutiny.

Even if the CTA were not a market participant, the Amended Complaint contains no factual allegations that show any burden on interstate commerce and thus does not meet the threshold requirement to invoke the Dormant Commerce Cluase. *See Alliant Energy Corp.*, 330 F.3d at 911. The Amended Complaint contains no allegations that any interstate interest is impaired in any way by the $5 fare. Neither named plaintiff was impeded from his or her trip as a result of the fare. Moreover, the central rationale behind the Dorman Commerce Clause doctrine "is to prohibit state or municipal laws whose object is local economic protectionism, laws that would excite those jealousies and retaliatory measures the Constitution was designed to prevent." *C & A Carbone, Inc.*, 511 U.S. at 390-91. The $5 fare at the O'Hare Station simply does not elicit those fears of protectionism.

Even if the O'Hare Station fare did burden interstate commerce, it would be permissible because the burden would be incidental and even handed. *See Pike*, 397 U.S. at 142. The fare does not discriminate against interstate commerce on its face. *See Oregon Waste Sys., Inc. v. Dept. of Environmental Quality of State of Or.*, 511 U.S. 93, 99 (1994) ("As we use the term here, 'discrimination' simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."). The Amended Complaint contains no

allegations that the CTA charges any passenger a different fare "by reason of [his or her] origin of destination out of state." *C&A Carbone Inc.*, 511 U.S. at 390. Nor does the exemption to the surcharge for O'Hare airport employees does not render the fare discriminatory. Individuals employed at O'Hare Airport are the only class exempted from the fare; all other Illinois residents must pay the $5 fare without regard to their origin or destination.

To the extent the fare places any burden on interstate commerce, the burden is the result of even handed regulation and the burden on interstate commerce is incidental. Passengers arriving from within and without Illinois are required to pay the fare at the O'Hare Station without regard to their point of origin. Moreover, the small size of the surcharge is not likely to place a substantial burden on any commercial activity. The requirement to pay an extra $2.75 to board the train is not "clearly excessive" in comparison to the CTA's need to balance its budget. *Pike*, 397 U.S. at 142. In short: "No disparate treatment, no disparate impact, no problem under the dormant commerce clause." *Nat'l Paint & Coatings Ass'n v. City of Chi.*, 45 F.3d 1124, 1132 (7th Cir. 1995).

> **B.** **The Amended Complaint does not state a claim that the O'Hare Station fare unconstitutionally burdens the right to travel**

Plaintiffs next assert that the O'Hare Station surcharge substantially interferes with the right to travel under the United States Constitution. (Am. Compl. ¶¶ 29-38). In general, Plaintiffs' argument seems to be that the fare charged at the O'Hare Station impedes the free flow of people between the states and thus violates the right to interstate travel. Specifically, Plaintiffs allege that travelers originating in some cities are required to arrive in Chicago at O'Hare, while others may fly to Midway Airport. This, Plaintiffs argue, "is discriminatory conduct by class distinction." Counts Two and Three contain materially identical allegations although each count cites a different constitutional doctrine in support of the right to travel.

7

Plaintiffs' response does not differentiate between the two counts based on the Privileges and Immunities Clause of Article IV and the Privileges or Immunities Clause of the Fourteenth Amendment. The Court notes that the scopes of the rights under these provisions are different, but reads the Amended Complaint to allege violations of the constitutional right to travel regardless of the source of the right. *See Chavez v. Ill. State Police*¸ 251 F.3d 612, 648 (7th Cir. 2001).

"The right to travel embraces at least three different components: (1) the right of a citizen of one state to enter and leave another state; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state; and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that state." *Chavez*, 251 F.3d at 648 (quoting *Saenz v. Roe*, 526 U.S. 489, 500 (1999)) (internal quotation marks omitted). Nevertheless, "minor restrictions on travel simply do not amount to the denial of a fundamental right." *Selevan v. New York Thruwaqy Auth.*, 584 F.3d 82, 100-01 (2d Cir. 2009). The Amended Complaint fails under each component of the right.

Initially, the Court notes that Plaintiffs' arguments with respect to both their right to travel and the Equal Protection Clause are underdeveloped to the point that the arguments are forfeited. *See Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014); *Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and underdeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks omitted). Plaintiffs consider these discrete issues in a single section of the response brief (Dkt. No. 52 p. 8) and do little more than provide the citation of cases that

Plaintiffs deem relevant. The entirety of Plaintiffs' construction of the relevant legal principle is as follows: "Simply put, a person has a right to travel through a state or to be treated the same as others in the state unless the state has some good reason to prevent same." (*Id.*). By way of example, at one point Plaintiffs argue that the O'Hare Station fare is "similar to the poll tax case," but offer no legal analysis to explain why the two are similar. The filing conflates constitutional doctrines and does not assist the Court in analyzing the pending motion. To the extent it contains any argument relevant to the motion to dismiss, the arguments are forfeited.

Even if the arguments were not forfeited, the Amended Complaint does not state a claim under any aspect of the right to travel. "The first component of the right to travel prohibits direct impairment of the right to move between the states, that is, the right to go from one state to another[.]" *Chavez¸* 251 F.3d at 649. The Amended Complaint does not allege any direct impairment of the right to travel between states. The O'Hare Station fare is not a prerequisite to entering Illinois, or even leaving O'Hare Airport. Indeed, the surcharge is not a barrier to entry to Illinois because one must already be present in Illinois in order to have the option to take the CTA. The CTA collects the O'Hare Surcharge only when passengers enter the CTA train at the O'Hare Station. The Amended Complaint makes clear that neither named plaintiff had any impediment when he or she entered into Illinois. Hlinak entered the state by plane and Jonke entered the state by car. The O'Hare Station fare is not an impediment to entry into Illinois and thus does not offend the first aspect of the constitutional right to travel.

The Amended Complaint likewise does not state a claim under the second component of the right to travel. The second component of the right to travel is "the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second state." *Chavez*, 251 F.3d at 648. This component has its origin in Article IV, Section 2 Clause 1 of the

Constitution. The Amended Complaint makes clear that the CTA's fare structure does not differentiate between passengers based on state of residence. Indeed, Hlinak is a resident of Nevada while Jonke is a resident of Illinois; both paid the same fare. Nothing in the Amended Complaint suggests that the CTA treats non-Illinois residents who board the train at O'Hare any differently than it treats Illinois residents who do so. In this sense, the CTA treats non-Illinois residents as welcome visitors when they board the train at O'Hare Station.

Finally, the Amended Complaint does not plead any facts relevant to the third component of the right to travel, namely that "for those travelers who elect to become permanent residents, the right to be treated like other citizens of that state." *Chavez*, 251 F.3d at 648. Payment of the O'Hare Station fare is not a prerequisite to Illinois citizenship or eligibility for government benefits and gaining Illinois citizenship would not relieve a visitor of the requirement to pay the fare. Thus, the Amended Complaint's allegations that the O'Hare Station fare violations the right to travel are dismissed as they fail to state a claim for relief.

### C. The Amended Complaint does not state a claim under the Equal Protection Clause

The Amended Complaint alleges that the surcharge discriminates against "interstate citizen travelers and Aliens." (Am. Compl. ¶ 40). The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny any person within its jurisdiction equal protection of the laws." U.S. Const. amend. XIV. In order to state a claim under the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must plead that "the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez*, 251 at 635-36. In other words, disparate impact is insufficient; the disparate result must be intentional. To establish discriminatory effect, plaintiffs must plead "that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class,

and that plaintiffs were treated differently from members of the unprotected class." *Id.* at 636. The Amended Complaint does not sufficiently allege either discriminatory effect or purpose.

Initially, the Complaint must be dismissed to the extent it alleges a violation of the Equal Protection Clause on behalf of "Aliens." It is not clear whether Plaintiffs use the term "Aliens" to refer to non-US citizens or simply passengers who arrived at O'Hare from outside the United States. In either case, however, neither of the named plaintiffs has standing to bring the claim. Article III of the Constitution grants this Court authority to decide cases only when "the party invoking the court's authority demonstrate[s] a *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Laskowski v. Spellings*, 546 F.3d 822, 825 (7th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)) (emphasis added) (internal quotation marks omitted). Both plaintiffs are United States citizens who arrived at O'Hare from within the United States. To the extent that any conduct by the CTA intentionally discriminated against Aliens – regardless of that term's construction – in violation of the Equal Protection Clause, Hlinak and Jonke may not seek redress for those violations.

The Amended Complaint fails to allege facts sufficient to show unconstitutionally discriminatory effect. First, the Court is aware of no authority for the proposition that interstate travelers are a protected class and Plaintiffs have cited none. *Cf., e.g.*, *C & G Trucking, Inc. v. Will Cnty.*, No. 09 C 5431, 2010 WL 780383 at *4 (N.D. Ill. Mar. 4 2010) (equal protection complaint dismissed when no protected class pled). Moreover, the Complaint does not allege that interstate travelers were treated differently that similarly situated people who were not in the protected class. The Amended Complaint is clear that all passengers, save for O'Hare Airport employees, are required to pay the fare regardless of the nature of their travel.

Moreover, the Amended Complaint does not contain an allegation of intentionality sufficient to support a finding of discriminatory purpose. *See Chavez*, 251 F.3d at 635 (plaintiff must demonstrate that discrimination was "motivated by a discriminatory purpose"). The Amended Complaint alleges only that the CTA treated Aliens and interstate citizen travelers differently than other people "without a proper basis or reason." It does not allege even the conclusion that interstate travelers were treated differently because of their status as interstate travelers, let alone plead facts that could lead to that conclusion.

> D. **The Court declines to exercise supplemental jurisdiction over state law claims**

Having dismissed each of the federal claims in the Amended Complaint, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See Hansen v. Bd. of Trustees of Hamilton Southeastern Sch. Corp.*, 551 F.3d 599, 607 (7th Cir. 2008) ("When all federal claims have been dismissed prior to trial, the principle of comity encourages federal courts to relinquish supplemental jurisdiction pursuant to § 1367(c)(3)."). None of the conditions that would require the Court to retain jurisdiction after dismissing the federal claims is present here. *See Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007) (district court should retain jurisdiction over state law claims where (1) statute of limitations would bar refiling in state court; (2) where substantial federal judicial resources have been expended on the state law claims; and (3) where it is obvious how the claims should be decided). The Court therefore declines to exercise supplemental jurisdiction over the remaining state law claims and dismisses them as well.

> E. **The class allegations are dismissed**

Having dismissed each of the substantive claims in the Amended Complaint, the Court likewise dismisses the collective action claim that is based on the same theories of recovery. *See*

*Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645, 653 (7th Cir. 2014) (dismissal of class claim appropriate where individual claims fail and no motion for class discovery has been made). As no motion for class certification has been made, the Court makes no findings as to the named plaintiffs' ability to represent the putative class consistent with Fed. R. Civ. P. 23 and constitutional due process requirements. Thus, this dismissal has no preclusive effect as to any putative class member who is not party to this case.

## CONCLUSION

For the reasons stated herein, the motion to dismiss is granted. The Amended Complaint is dismissed.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 1/28/2015